Byron G. Martin (#8824)
Jonathan A. Mena (#18473)
STRONG & HANNI
9350 S. 150 East, Suite 500
Sandy, Utah  84070
Telephone: (801) 532-7080
Facsimile: (801) 596-1508
bmartin@strongandhanni.com
jmena@strongandhanni.com

*Attorneys for Nationwide General Insurance Company*

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NATIONWIDE GENERAL INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NEAL DASTRUP INSURANCE, INC., a Utah corporation,<br><br>Defendant. | **COMPLAINT**<br><br><br>Case No. 2:25-cv-00370 |

Plaintiff Nationwide General Insurance Company ("Nationwide") complains and alleges against Defendant Neal Dastrup Insurance, Inc.[1] ("Dastrup") as follows:

**PARTIES**

1. Nationwide is an Ohio corporation authorized to do business as an insurer in the State of Utah.

---

[1] Neal Dastrup Insurance, Inc. is also identified in Nationwide's corporate records and contracts as Neal Dastrup Insurance Inc which Nationwide understands to be the same entity.

1

2. Dastrup is a Utah corporation doing business in Utah, and acts and acted as set forth in this Complaint either independently or through its agents, employees, and producers in the course and scope of their employment and agency and for whose conduct Dastrup is responsible and liable.

**JURISDICTION AND VENUE**

3. This judicial district is the proper venue to hear this matter because the contract in question were entered in Utah, the events complained of herein and in the Underlying Action (as defined below) occurred in Utah, and Dastrup resides in Utah. *See* 28 U.S.C. § 1391.

4. This Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Nationwide and Dastrup and because the amount in controversy, excluding interest and costs, exceeds $75,000.

5. This Court further has subject-matter jurisdiction over this matter in that Nationwide seeks civil relief as stated in this Complaint.

6. Nationwide is a citizen of the State of Ohio only, since it is incorporated in and under the laws of the State of Ohio only, has its only principal place of business in the State of Ohio, and is domiciled in the State of Ohio only.

7. Dastrup is a citizen of the State of Utah only, since it is incorporated in and under the laws of the State of Utah only, has its only principal place of business in the State of Utah, and is domiciled in the State of Utah only.

8. Concerning the amount in controversy, Alex Quinn ("Quinn") has sued Nationwide in a civil matter that is pending in the United States District Court in and for the District of Utah, currently captioned <u>Alex Quinn v. Nationwide General Insurance Company</u>, Case No. 2:24-cv-00657-CMR (the "Underlying Action").

9. The Underlying Action is based on Quinn's claim that Nationwide wrongfully denied insurance coverage for fire damage to his property in located at 459 East 900 South, Orem Utah (the "Orem Property"). The subject fire occurred on May 11, 2023, burning the main structure and causing significant damage thereto.

10. Quinn alleges in the Underlying Action that Nationwide should be responsible to cover and pay the fire loss under an insurance policy issued by Nationwide to Quinn, which policy has dwelling coverage limits of at least $354,600, other structure limits of $34,232, and personal property limits of $265,950. For the loss to the Orem Property Quinn alleges the "total owed coverage to $531,900" (Complaint, ¶ 27), and in addition seeks damages to other structures, personal property up to $265,950.

11. In addition, Quinn alleges that Nationwide breached the covenant of good faith and fair dealing, and therefore claims consequential damages, attorney's fees, and other amounts separate from costs and interest, which – together with the claimed damages for damage to property by fire – allegedly qualify the case for "Tier 3" under state court procedures, which in turn signifies that Quinn is claiming at least $300,000 or more in damages in the aggregate in the Underlying Action. *See* Rule 26(c)(3)-(5), Utah R. Civ. P.; Complaint in Underlying Action, ¶ 5 ("the amount of damages exceeds $300,000"), Tier 3 designation.

12. Though Nationwide denies that Quinn is entitled to recovery in the amounts claimed, it is clear from the insurance policy limits and Quinn's Complaint that Quinn's claim for damages places the amount in controversy in the Underlying Action in excess of the jurisdictional limit of $75,000, exclusive of interests and costs.

13. If Quinn is successful in proving his case against Nationwide in the Underlying Action, Nationwide seeks recovery of all the same damages against Dastrup in the present action,

which damages therefore necessarily exceed the jurisdictional limit of $75,000, exclusive of interests and costs.

14.     Should the Court need any further showing of the amount in controversy or citizenship of the parties, the Court should permit limited discovery, briefing, and/or hearings as necessary to establish jurisdiction. *See* 28 U.S.C. § 1653; *Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1289 (10th Cir. 1971).

## GENERAL ALLEGATIONS

15.     This case arises out of a residential fire loss insurance claim.

16.     On or after November 2, 2016 and January 19, 2017, Nationwide and Dastrup entered into agency contracts in which Nationwide granted Dastrup limited authority to solicit insurance applications, deliver and countersign policies, collect premiums, temporarily bind coverage, and otherwise act for Nationwide as described in their agreement, subject to following Nationwide's underwriting rules, regulations, and procedures in the transactions. Dastrup also agreed therein not to engage in negligent acts, errors, omissions, or misrepresentations in connection with its work as may result in claims being brought and established against Nationwide.

17.     Dastrup was an independent agent who had agency agreements with numerous other carriers and who primarily acted on behalf of policyholders to shop their business across multiple carriers for the best coverage and at the lowest price, to collect and submit policyholders' information through applications and otherwise to the carriers, to communicate with and provide notices to the carriers on policyholders' behalf, and to guide, consult, and advise those policyholders concerning their insurance needs, requirements, and coverage. Dastrup undertook those actions and duties on behalf of Quinn in its interactions with him.

18. Quinn purchased the Orem Property in or near the end of September 2021, and moved in soon thereafter.

19. He insured the property with Nationwide under a homeowner's policy number 72 43 HR 022539 with policy period of September 28, 2021 to September 28, 2022 (the "Policy").

20. Quinn utilized the services of Dastrup in applying for and procuring that Policy, wherein Quinn and Dastrup represented to Nationwide that the Orem Property was a single-family, owner-occupied risk.

21. The Orem Property at some point was converted into and then used as a multi-family dwelling that included a main floor apartment and a basement apartment, each capable of housing separate families in independent leaving spaces; that represents a homeowner risk that Nationwide does not underwrite and/or would not underwrite per the terms of the Policy that was issued.

22. Notwithstanding, Quinn rented the basement apartment of the Orem Property to Teresa Neilsen beginning in or around January 2022.

23. In May 2022, Quinn moved to California to sell pest control for the summer.

24. Quinn subsequently purchased a home in Provo Utah located at 472 East 4380 North (the "Provo Property") and subsequently moved into the Provo Property during late August or September 2022; he subsequently rented out both levels of the Provo Property.

25. Quinn insured the Provo Property with Nationwide under a homeowner's policy number 72 43 HR 025399 with policy period of July 5, 2022 to July 5, 2023 (the "Provo Policy").

26. Quinn utilized the services of Dastrup in applying for and procuring the Provo Policy.

27. On September 28, 2022, the homeowner insurance on the Orem Property renewed under Policy number 72 43 HR 022539, with an expiration date of September 28, 2023.

28. Quinn rented the main level apartment of the Orem Property to Janiel Sandberg in or around October 2022. Until that time, Quinn and his family continued to use the Orem Property for the Quinns' residential purposes or kept it available for the Quinns' residential use.

29. On or toward the beginning of May, 2023, Quinn moved to California to sell pest control for the summer.

30. Soon thereafter, on May 11, 2023, a fire damaged the Orem Property.

31. The fire was started by a guest of Quinn's tenant at the Orem Property who was burning weeds in the flower beds with a propane torch.

32. At the time of the fire, Quinn was not occupying the Orem Property as an owner or otherwise, and had instead rented it out completely to Teresa Nielsen and Janiel Sandberg, which is a risk that Nationwide does not underwrite nor cover under homeowner policies, and which is precluded from coverage under one or more of the following Policy provisions:

   a. Declarations (p. 1): "Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. . . . Occupants in Dwelling One Family. . . . Residence Premises Information: 459 E 900 S OREM UT 84097-7141."

   b. H 00 03 07 16 (p. 3): "We will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all applicable provisions of this policy. . . ."

   c. H 00 03 07 16 (p. 3): "You have a duty to notify us as soon as possible of any change which may affect the risk under this policy. This includes, but is not limited to, changes: (1) In the title/ownership of the 'residence premises'; or (2) In the occupancy or use of the 'residence premises'."

   d. H 00 03 07 16 (pp. 5-6): "'Insured location' means: a. The 'residence premises'; b. The part of other premises, other structures and grounds used by you as a residence; and (1) Which is shown in the Declarations."

  e. H 00 03 07 16 (p. 7): "'Residence premises' means: a. The one-family dwelling where you reside; . . . on the inception date of the policy period shown in the Declarations and which is shown as the 'residence premises' in the Declarations."

  f. H 00 03 07 16 (p. 7): "SECTION I – PROPERTY COVERAGES A. Coverage A – Dwelling 1. We cover: a. The dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling . . . .  Coverage B — Other Structures 1. We cover other structures on the 'residence premises' set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection."

  g. H 00 03 07 16 (p. 22): "SECTION I — EXCLUSIONS A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area. . . . 11. Increased Hazard [.] Increased Hazard means any loss occurring while hazard is increased by a means within the control and knowledge of an 'insured'."

  h. H 00 03 07 16 (pp. 23-28), H 01 00 UT 02 19 (p. 1): "SECTION I – CONDITIONS . . . H. Suit Against Us [-] No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy . . . . R. Dwelling [-] We insure the dwelling, as described in the Declarations of this policy, only as the 'residence premises', while occupied by the 'insured' as the owner, for dwelling purposes and not otherwise.  This condition applies, at the time of loss, to Coverage A — Dwelling, Coverage B — Other Structures and Coverage C — Personal Property as provided by this contract."

  i. The policy application also provides at pp. 1, 4: "Occupancy [-] Owner [-] Secondary [-] No [-] Currently Owner Occupied [-] Yes [-] . . . Number of families [-] 1 . . . I declare that all of the foregoing statements are true and that these statements are offered as an inducement to the Company to issue the policy for which I am applying."

33. After the fire, Quinn made a claim on Nationwide for damage to the Orem Property, which claim was denied.

34. Nationwide contends that Quinn's claim was properly denied by Nationwide due to, among other things, the lack of owner occupancy at the time of loss and the other reasons set forth above and as set forth in its January 3, 2024 denial letter.

7

35. In addition, Nationwide was not notified of the key changes in Quinn's use and occupancy of the Orem Property, nor was it notified concerning the conversion and use of the Orem Property as multi-family dwelling involving multiple apartments for multiple families. As a result, Nationwide wrote the Policy coverage that it otherwise would not have and/or was deprived of the opportunity to cancel or non-renew the Policy prior to the subject fire loss.

36. Based on the denial, Quinn subsequently brought the Underlying Action against Nationwide claiming breach of the Policy, declaratory judgment, breach of duty and good faith and fair dealing, and estoppel.

37. In defending the Underlying Action, Nationwide has asserted that though Dastrup was appointed by Nationwide as required by Utah statute when the Policy was issued, Dastrup was acting as Quinn's agent, not Nationwide's, during any event – including without limitation populating insurance applications and reporting the facts to Nationwide – that may determine coverage or liability as between Quinn and Nationwide.

38. In defending the Underlying Action, Nationwide has received evidence from Dastrup that Dastrup tried to help Quinn several times obtain a landlord policy on the Orem Property and that Quinn negligently failed to take advantage of Dastrup's efforts, suggesting that fault in the matter likely rests with Quinn.

39. However, Quinn has claimed in the Underlying Action that Dastrup procured the wrong coverage and otherwise failed to properly act. Quinn has alleged that Dastrup was acting as Nationwide's agent rather than Quinn's agent in helping Quinn with his policies, that Quinn had previously disclosed to Dastrup all necessary occupancy and residency information, that therefore Nationwide knew about the same, and that Dastrup procured the wrong coverage for

Quinn on the Orem Property. Quinn also claims that Dastrup should not have allowed Quinn to take out the Provo Policy without Dastrup first securing a landlord policy on the Orem Property.

40. If Quinn prevails in the Underlying Action and thereby proves those contentions, proves that coverage exists or that Nationwide is estopped from denying coverage, that Dastrup was acting as Nationwide's agent at all times, that Quinn made all necessary disclosures concerning use and occupancy to Dastrup, that Dastrup should have followed-up earlier, more frequently, and/or more effectively with the Quinns to get a landlord policy in place on the Orem Property, and/or that Dastrup otherwise acted negligently or wrongfully, and if Nationwide therefore becomes liable to Quinn for damages in the Underlying Action, then Dastrup has breached its duties to Nationwide to Nationwide's detriment.

41. If Quinn's contentions are true, Nationwide has claims against Dastrup for negligence, breach of fiduciary duty, indemnity, and/or breach of contract.

## FIRST CAUSE OF ACTION
**(Breach of Contract / Contractual Indemnification)**

42. Nationwide incorporates the other allegations of this Complaint as though fully set forth herein.

43. Nationwide entered into an express and implied binding and enforceable contracts with Dastrup, as further described above, that was evidenced over the years in writing, by course of conduct, and through verbal communication.

44. Nationwide has serious doubts about the truth of Quinn's contentions in the Underlying Action described above, but they have not been directly adjudicated and currently remain as open issues. If Quinn's contentions are true, then Dastrup breached its contract with Nationwide by negligently or improperly:

    a. failing to properly solicit applications and deliver policies;

b. failing to properly service Quinn's policies;

c. incorrectly reporting to Nationwide the facts concerning the actual nature, use, and occupancy of the Orem Property;

d. knowing or being required to know that the Orem Property was a converted property that had or would be put to use by multiple families in multiple apartments and not communicating the same to Nationwide;

e. knowing that the Orem Property was or would be not occupied by the Quinns as owners and not communicating the same to Nationwide;

f. not adhering to Nationwide's underwriting rules, regulations, and procedures in the Quinn's insurance transactions;

g. causing homeowner coverage or homeowner renewals to be issued on the Orem Property rather than a landlord policy;

h. causing homeowner coverage to be issued on the Provo Property without first advising the Quinns that the coverage on the Orem Property should first be converted to a landlord policy;

i. failing to take all reasonable steps to ensure that Quinn would obtain a landlord policy on the Orem Property prior to the loss;

j. recommending or maintaining the wrong coverage for the Orem Property upon renewal;

k. failing to inform Nationwide when Dastrup suspected or should have suspected that the Orem Property was not properly insured, and that Quinn was not responding to Dastrup's efforts to change the coverage;

l. engaging in negligent acts, errors, omissions, or misrepresentations in connection

        with Quinn's policies of insurance; and

   m. otherwise failing to comply with the express and implied terms of the agency contract.

45. Nationwide fully performed its obligations under the contract.

46. Those breaches of contract by Dastrup are the proximate cause of harm and damage to Nationwide, including:

   a. Nationwide writing the Policy that it otherwise would not have and/or preventing Nationwide from cancelling or non-renewing the Policy prior to the subject fire loss, resulting in potential Policy exposure (depending on the outcome of the Underlying Action) where none should exist; and

   b. subjecting Nationwide to the costs of defending the Underlying Action and a potential judgment therein, which costs and judgment Nationwide would be entitled to recover from Dastrup as damages in this case.

47. Furthermore, Dastrup also agreed to defend, indemnify, and hold Nationwide harmless from and against all claims arising out of Dastrup's negligent performance of services, breach of agreement, or any other negligent act, error, omission, or misrepresentation by Dastrup. Therefore, in the event that Nationwide is adjudicated to be liable to Quinn, or upon any other final judgment on the matter, Dastrup must defend, indemnify, and hold Nationwide harmless for all expenses and damages incurred by Nationwide in the Underlying Action and in this case, and Nationwide may recover the same from Dastrup as damages in this case.

## SECOND CAUSE OF ACTION
(Negligence)

48. Nationwide incorporates the other allegations of this Complaint as though fully set forth herein.

49. Nationwide entered into an express and implied binding and enforceable contracts with Dastrup, as further described above, that was evidenced over the years in writing, by course of conduct, and through verbal communication.

50. The assumption of duties and agency relationship in the contracts gave rise to an independent duty on the part of Dastrup to exercise reasonable care in the discharge of its responsibilities as Nationwide's agent.

51. Nationwide has serious doubts about the truth of Quinn's contentions in the Underlying Action described above, but they have not been directly adjudicated and currently remain as open issues. If Quinn's contentions are true, then Dastrup breached its duties of care to Nationwide by negligently or improperly:

   a. failing to properly solicit applications and deliver policies;

   b. failing to properly service Quinn's policies;

   c. incorrectly reporting to Nationwide the facts concerning the actual nature, use, and occupancy of the Orem Property;

   d. knowing or being required to know that the Orem Property was a converted property that had or would be put to use by multiple families in multiple apartments and not communicating the same to Nationwide;

   e. knowing that the Orem Property was or would be not occupied by the Quinns as owners and not communicating the same to Nationwide;

   f. not adhering to Nationwide's underwriting rules, regulations, and procedures in the Quinn's insurance transactions;

   g. causing homeowner coverage or homeowner renewals to be issued on the Orem Property rather than a landlord policy;

    h. causing homeowner coverage to be issued on the Provo Property without first advising the Quinns that the coverage on the Orem Property should first be converted to a landlord policy;

    i. failing to take all reasonable steps to ensure that Quinn would obtain a landlord policy on the Orem Property prior to the loss;

    j. recommending or maintaining the wrong coverage for the Orem Property upon renewal;

    k. failing to inform Nationwide when Dastrup suspected or should have suspected that the Orem Property was not properly insured, and that Quinn was not responding to Dastrup's efforts to change the coverage;

    l. engaging in negligent acts, errors, omissions, or misrepresentations in connection with Quinn's policies of insurance; and

    m. otherwise failing to comply with the express and implied terms of the agency contracts.

52. Those breaches of duty by Dastrup are the proximate cause of harm and damage to Nationwide, including:

    a. Nationwide writing the Policy that it otherwise would not have and/or preventing Nationwide from cancelling or non-renewing the Policy prior to the subject fire loss, resulting in potential Policy exposure (depending on the outcome of the Underlying Action) where none should exist; and

    b. subjecting Nationwide to the costs of defending the Underlying Action and a potential judgment therein, which costs and judgment Nationwide would be entitled to recover from Dastrup as damages in this case.

## THIRD CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

53. Nationwide incorporates the other allegations of this Complaint as though fully set forth herein.

54. Nationwide entered into an express and implied binding and enforceable contracts with Dastrup, as further described above, that was evidenced over the years in writing, by course of conduct, and through verbal communications.

55. The assumption of duties by Dastrup and the agency in the contracts gave rise to a fiduciary relationship between Nationwide on the one hand and Dastrup on the other, in turn giving rise to an independent fiduciary duty on the part of Dastrup to exercise honesty, loyalty, fidelity, fairness, care, diligence, and prudence in performing its duties to Nationwide in Nationwide's best interests in the insurance transactions described herein.

56. Nationwide has serious doubts about the truth of Quinn's contentions in the Underlying Action described above, but they have not been directly adjudicated and currently remain as open issues. If Quinn's contentions are true, then Dastrup breached its fiduciary duties to Nationwide by negligently or improperly:

   a. failing to properly solicit applications and deliver policies;

   b. failing to properly service Quinn's policies;

   c. incorrectly reporting to Nationwide facts concerning the actual nature, use, and occupancy of the Orem Property;

   d. knowing or being required to know that the Orem Property was a converted property that had or would be put to use by multiple families in multiple apartments and not communicating the same to Nationwide;

   e. knowing that the Orem Property was or would be not occupied by the Quinns as

owners and not communicating the same to Nationwide;

f. not adhering to Nationwide's underwriting rules, regulations, and procedures in the Quinn's insurance transactions;

g. causing homeowner coverage or homeowner renewals to be issued on the Orem Property rather than a landlord policy;

h. causing homeowner coverage to be issued on the Provo Property without first advising the Quinns that the coverage on the Orem Property should first be converted to a landlord policy;

i. failing to take all reasonable steps to ensure that Quinn would obtain a landlord policy on the Orem Property prior to the loss;

j. recommending or maintaining the wrong coverage for the Orem Property upon renewal;

k. failing to inform Nationwide when Dastrup suspected or should have suspected that the Orem Property was not properly insured, and that Quinn was not responding to Dastrup's efforts to change the coverage;

l. engaging in negligent acts, errors, omissions, or misrepresentations in connection with Quinn's policies of insurance; and

m. otherwise failing to comply with the express and implied terms of the agency contracts.

57. Nationwide placed its trust in Dastrup and relied on it to perform its fiduciary duties. The breach of those fiduciary duties by Dastrup are the proximate cause of harm and damage to Nationwide, including:

a. Nationwide writing the Policy that it otherwise would not have and/or preventing

Nationwide from cancelling or non-renewing the Policy prior to the subject fire loss, resulting in potential Policy exposure (depending on the outcome of the Underlying Action) where none should exist; and

b. subjecting Nationwide to the costs of defending the Underlying Action and to a potential judgment therein, which costs and judgment Nationwide would be entitled to recover from Dastrup as damages in this case.

## PRAYER FOR RELIEF

WHEREFORE, Nationwide prays for the following relief against Dastrup:

1. All damages identified in this Complaint;

2. Special and general damages as set forth in this Complaint and as may be proven at trial, against Dastrup;

3. A judgment against Dastrup in favor of Nationwide in an amount to be determined at trial;

4. Pre and post judgment interest;

5. Attorney's fees;

6. For all costs incurred herein; and

7. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Nationwide requests that all issues of fact be tried to a jury.

DATED May 9, 2025.

                            STRONG & HANNI

                            */s/ Byron G. Martin*

                            Byron G. Martin
                            Jonathan A. Mena
                            *Attorneys for Nationwide General Insurance Company*